OPINION OF THE COURT
Lee Towne Adams, J.
Petitioners herein established new titles for their employees as of January 1, 1982. They assigned the newly titled position to various grades and steps on the salary scale which the legislature of the county had established. Respondent Tangalos, personnel director, refused to certify the payment of salaries to the board employees from January 1, 1982 through February 25, 1982. The respondent Nelson refused to pay the board employees in accordance with their newly established steps and grades. Petitioners seek judgment requiring respondents to pay their employees at the new scale from January 1 through February 25, and further demand that respondents be restrained from establishing titles and prescribing the duties of those officers.
The facts are not in dispute. The salaries established by the commissioners were within the limits of the budget appropriations of the Chautauqua County Legislature. Nevertheless, respondents refused to accept the new titles and the salary steps until the legislature of the county had adopted a resolution establishing such grades and steps. The legislature did by Resolution No. 45-82, signed by the county executive on February 25, establish grades and *697 steps for the election personnel which were the same as those established by the commissioners. The titles assigned to the personnel, however, were different. After February 25, the election employees began to receive their salaries.
Respondents contend that the commissioners are not aggrieved, and, accordingly, have no standing. If their position be right, respondents are intruding upon the commissioners’ powers and duties. Accordingly, they are aggrieved; and this is not a political controversy, as respondents allege, but is a matter of interpretation of the laws.
The issue before the court is simple — which body has the power to establish the titles, duties, and salary grades of election employees — the Board of Elections itself, or the county legislature and its civil service agency (the personnel director)?
The statutory and constitutional provisions in point are as follows.
“All laws creating, regulating or affecting boards or officers charged with the duty of registering voters, or of distributing ballots to voters, or of receiving, recording or counting votes at elections, shall secure equal representation of the two political parties which, at the general election next preceding that for which such boards or officers are to serve, cast the highest and the next highest number of votes. All such boards and officers shall be appointed or elected in such manner, and upon the nomination of such representatives of said parties respectively, as the legislature may direct.” (NY Const, art II, § 8.)
(The Legislature here referred to is the Legislature of the State of New York.)
“Every board of elections shall appoint, and at its pleasure remove, clerks, voting machine technicians, custodians and other employees, fix their number, prescribe their duties, fix their titles and rank and establish their salaries within the amounts appropriated therefor by the local legislative body and shall secure in the appointment of employees of the board of elections equal representation of the major political parties.” (Election Law, § 3-300; emphasis supplied.)
*698 “Subject to the constitution and the civil service law but notwithstanding the provisions of any other general law or of any special law to the contrary, the compensation of all employees paid from county funds shall be fixed by the board of supervisors. The board of supervisors may adopt schedules of compensation and grades with minimum and maximum salaries.” (County Law, § 205.)
“1. County civil service commission or personnel officer. The civil service commission or personnel officer of a county shall administer the provisions of this chapter with respect to the offices and employments in the classified service of such county and the civil divisions therein, including school districts, except cities which are operating under one of the optional forms of civil service administration provided in section fifteen of this chapter and the city school districts of such cities.” (Civil Service Law, § 17, subd 1.)
“Unclassified Service
“The civil service of the state and each of its civil divisions shall be divided into the classified and unclassified service. The unclassified service shall comprise the following * * *
“(f) all members, officers and employees of boards of elections”. (Civil Service Law, § 35.)
The Constitution and the statutes are plain and clear on one point. The employees of the Board of Elections are not under or subject to the authority of the personnel director. He has nothing to say about titles, or duties, or salaries, or who shall be employed. He does not approve Election Board payrolls. Such payrolls must be certified to the Director of Finance by one of the commissioners. (Cf. Matter of Starr v Meisser, 39 AD2d 712.)
Nor is there any actual conflict between the sections of the County Law and the Election Law (as the Chautauqua County Attorney pointed out in an opinion dated January 5, 1982). “It appears that County Law § 205 requires that the governing body control the total compensation of the Board of Election staff. Election Law § 3-300 indicates the discretion to appoint, remove and assign titles, and salaries of Board Employees is vested in the Board within the *699 monetary limits prescribed by the Legislature.” (Opn of Edwin J. Kuzdale, Esq., Chautauqua County Attorney.) Further, county legislatures have the right to establish uniform grades and steps, and the salaries appropriate to such grades. (Chautauqua County has grades 1 through 40 and steps on grade 1-6.) Once the grades and steps have been established by the county legislature, the Board of Elections, is empowered to perform its duties set forth in the Constitution and statutes, to establish titles, to fit those titles to grades and steps, and to fill those positions according to law and within the budget.
The Board of Elections here acted fully within its power. It did not try to set salaries except within the county system of grades. It established its titles and prescribed its employees’ duties. It did its duty in accordance with the Constitution which demands total bipartisanship on the board. All legislative bodies are of necessity partisan bodies. The State Constitution and the Legislature of the State acting under such Constitution demand that county legislatures must not be allowed to control bipartisan Boards of Elections once annual moneys have been appropriated. To allow the county legislative body to control Board of Election policies in any way would be to thwart the Constitution (Matter of Blondheim v Cohen, 248 App Div 75, affd 272 NY 520.)
Petitioners may have judgment for the relief demanded.