OPINION OF THE COURT
John P. Lane, J.
The process for managing the Erie County budget for 2005 continues to be the subject of litigation between the elections commissioners and other county officials, all in their official capacities and as citizen-taxpayers against the County Executive, his budget director and personnel commissioner, the county legislature and the County of Erie. Previously, this court severed the claim made by the election commissioners that respondents have prevented them from filling established Board of Elections positions for which funding is available. The commissioners now return to this issue and ask this court to confirm their authority to fix the number, titles, rank and salaries of its employees within the total funds appropriated by the county legislature. They also seek an order directing the respondents to certify the payroll and compensate its employees.
Respondents seek dismissal of the amended petition. Broad public policy concerns and a clear reading of the applicable statutory law and New York State Constitution, article II, § 8[2] compel this court to uphold the unfettered authority of the Board of Elections to fix the number of its employees and establish their salaries within the amounts appropriated by the County. Therefore, petitioners’ application is granted and respondents’ motions are denied for the reasons that follow.
To put the argument in simplest terms, the county respondents claim that County Law § 205 is the controlling authority in this dispute, rather than Election Law § 3-300, as urged by petitioners. Thus, the county respondents contend that the county legislature has the authority to control both the number of election employees and their individual salaries. To adopt the position of the county respondents would render part of section 3-300 of the Election Law meaningless, an interpretation that must be avoided (see Matter of Rochester Community Sav. Bank v Board of Assessors of City of Rochester, 248 AD2d 949, 950 *725 [1998], lv denied 92 NY2d 811 [1998]; see also Matter of Klipp v New York State Civ. Serv. Commn., 42 Misc 2d 35, 39 [1964], affd 22 AD2d 854 [1964], affd 15 NY2d 880 [1965]; McKinney’s Cons Laws of NY, Book 1, Statutes § 144), and one which this court refuses to entertain.
Section 3-300 of the Election Law provides:
“Every board of elections shall appoint, and at its pleasure remove, clerks, voting machine technicians, custodians and other employees, fix their number, prescribe their duties, fix their titles and rank and establish their salaries within the amounts appropriated therefor by the local legislative body and shall secure in the appointment of employees of the board of elections equal representation of the major political parties.” (Election Law § 3-300 [emphasis added].)
This language is unambiguous and clear. In such circumstances, resort to statutory interpretation by the courts is generally unnecessary (see McKinney’s Cons Laws of NY, Book 1, Statutes § 76). Here, however, respondents assert that this plain language conflicts with another applicable statute, County Law § 205. That statute is codified in article 5 of the County Law, establishing the general powers of a board of supervisors, or, as here, a county legislature. It provides:
“Subject to the constitution and the civil service law but notwithstanding the provisions of any other general law or of any special law to the contrary, the compensation of all employees paid from county funds shall be fixed by the board of supervisors. The board of supervisors may adopt schedules of compensation and grades with minimum and maximum salaries.” (County Law § 205 [emphasis added].)
The emphasized language was added to the statute by Laws of 1956 (ch 867), when the words “general laws of this state and to rules and regulations made pursuant thereto” were deleted. Respondents claim that the 1956 amendment referring to “general law” creates a conflict and argue that County Law § 205 takes precedence over the Election Law, a general law.
Rather than finding the statutes to be in conflict, this court construes them to complement one another. They therefore should be read in pari materia (see Neddo v State of New York, 194 Misc 379, 385 [1948], affd 275 App Div 492 [1949], affd 300 NY 533 [1949]; Rector, Church Wardens & Vestrymen of St. Bartholomew’s Church v Committee to Preserve St. Bartholomew’s *726 Church, 84 AD2d 309, 312-313 [1982], appeal dismissed 56 NY2d 645 [1982]; Lumbermens Mut. Cas. Co. [Berkovic], 74 AD2d 496, 498 [1980]; McKinney’s Cons Laws of NY, Book 1, Statutes § 221; see also Khela v Neiger, 85 NY2d 333, 336-337 [1995]).
The very issue before this court was first addressed two decades ago in Matter of Larson v Tangalos (113 Misc 2d 696 [1982]). There Supreme Court, Chautauqua County, determined that the Board of Elections had acted fully within its power in setting new titles for its employees and establishing salary grades and steps within the amounts appropriated by the Chautauqua County Legislature. It found no “actual conflict between the sections of the County Law and the Election Law” (id. at 698) and read the statutes in harmony, as does this court. Although it has not explicitly addressed this issue, our Fourth Department has indicated in dicta that it is the county Board of Elections that is authorized to set its employees’ salaries rather than the county legislature (see Matter of Wilson v Allegany County, 175 AD2d 645 [1991]; see also Matter of Gamache v Steinhaus, 7 AD3d 525, 526 [2004]). While Wilson concerned an application for attorneys’ fees by petitioner Allegany Board of Elections, the underlying issue was the Election Board’s authority to set its deputies’ salaries.[3] The Board prevailed on the merits at Supreme Court and the Fourth Department modified Supreme Court’s determination, holding that the Board of Elections was entitled to recover attorney’s fees for prosecution of the proceeding and appeal. Further, in Matter of Gimbrone v Stevenson (8 AD3d 959, 961 [2004]), the Fourth Department stated that “the commissioners of election have complete and exclusive control in hiring and terminating” their employees, and viewed the County’s obligation to pay election clerks as “purely ministerial” (id., citing Matter of Graziano v County of Albany, 309 AD2d 1062 [2003], affd in part as mod 1 NY3d 507 [2004]). In view of the above, the opinions of the State Comptroller (12 Ops St Comp No. 8236, at 299 [1956]) and the New York State Elections Board (1975 Op State Bd of Elections No. 2) relied upon by respondents are not persuasive.
The County’s argument that section 205 of the County Law deprives the Board of Elections of the authority to “fix [the] *727 number, prescribe [the] duties, fix [the] titles and rank and establish [the] salaries” of its employees (Election Law § 3-300) is without merit. Section 205 of the County Law merely provides the authority (see generally Gimbrone) for the county legislature to determine the total amount to be appropriated to compensate Board of Elections employees and adopt schedules of compensation and grades with minimum and maximum salaries. It must be read in conjunction with Election Law § 3-300, where the authority is clearly and unequivocally granted to the Board to fix the number of its employees and “establish their salaries within the amounts appropriated therefor” by the county legislature. Additionally, respondents’ argument that the authority of the Board under section 3-300 to fix the salaries of its employees is in any way limited by the Erie County Charter or the County’s Administrative Code is incorrect. The Board of Elections is granted broad discretion in personnel matters (see County of Chautauqua v Chautauqua County Employees’ Unit 6300 of Local 807 of Civ. Serv. Employees’ Assn., 181 AD2d 1052, 1052 [1992]; accord Matter of Board of Elections of County of Westchester v O’Rourke, 210 AD2d 402 [1994]; Election Law § 3-300). The provisions of the Election Law, a general law, cannot be superseded by the Erie County Charter (see Municipal Home Rule Law § 34 [3] [g]; accord Matter of Monahan v Murphy, 71 AD2d 92, 94 [1979], affd 51 NY2d 807 [1980] for reasons stated below) and, therefore, cannot be subordinated to the County’s Administrative Code.
Further support for the authority of the Board of Elections to fix the number of its employees, and, therefore, their salaries within the amounts appropriated for the Board is found in Election Law § 3-302 (1), which provides in pertinent part: “The board of elections shall appoint as many voting machine technicians and voting machine custodians as shall be necessary for the proper preparation and repair of voting machines.” (Emphasis added.) Had the New York State Legislature intended to curtail the Board of Elections’ discretionary authority to appoint its employees, it certainly could have done so (see Matter of Fugazy v Kern, 280 NY 375, 379 [1939] [discussing Election Law § 36, the predecessor to section 3-300]).
Respondents’ argument that if this court adopts the Board’s position, the petitioner Board of Elections would then be able to spend the total amount allocated for salaried items between the two petitioning Commissioners of Elections is rejected as without merit. Election Law § 3-208 explicitly provides that the *728 salary of each election commissioner outside the City of New York shall be set by the county legislative body.
Finally, it is not the function of the County’s commissioner of personnel to certify the payroll of the Board of Elections. His authority is limited to performing that function for officers and employees within the classified civil service (see Civil Service Law § 17 [1]). Board of Elections members, officers and employees are not within the classified civil service (see Civil Service Law § 35 [f]). Respondents shall henceforth recognize the number, titles, rank and salaries of employees of the Board of Elections certified by the Commissioners of the Board of Elections within the amounts appropriated therefor, and process and approve payrolls for those employees as approved and certified by the Board of Elections from time to time.

. That section of the State Constitution provides for equal representation among the two major political parties in the appointment of employees of the Board of Elections.

. “[T]he Allegany County Board of Elections . . . has the statutory authority to establish the salaries of Board of Elections employees within the amounts appropriated by the local legislative body (Election Law § 3-300)” (id. at 645-646).